**Maisie CRACE (Widow of Walter M. Crace), Petitioner,**

v.

**KENTLAND–ELKHORN COAL CORPORATION and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 96–3538.

United States Court of Appeals, Sixth Circuit.

Submitted March 17, 1997.

Decided April 7, 1997.

Maisie Crace (briefed), Charlotte, NC, pro se.

Billie R. Shelton (briefed), Baird, Baird, Baird & Jones, Pikeville, KY, for Kentland–Elkhorn Coal Corporation.

Rita Roppolo, Christian P. Barber (briefed), U.S. Department of Labor, Office of the Solicitor, Washington, DC, for Director, Office of Workers' Compensation Programs, United States Department of Labor.

Before: MERRITT and BOGGS, Circuit Judges; BECKWITH, District Judge.*

MERRITT, Circuit Judge.

## SUMMARY

Maisie Crace, the widow of a miner who died in 1988, appeals the decisions of an administrative law judge and the Department of Labor's Benefits Review Board denying her claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. We must determine whether the government or Kentland–Elkhorn Coal Corp. is the proper respondent in this case, and if the latter is properly responsible, whether substantial evidence exists to support the administrative law judge's resolution of the merits of the claim.

## FACTS

This case has a long and somewhat complex history. Mr. Crace worked in coal mines in various capacities for much of his life, and was clearly exposed to coal dust. Though the parties apparently once disagreed about the length of Mr. Crace's coal-mine employment, we need not resolve this issue precisely. It is clear—and neither the government nor Kentland–Elkhorn disputes—that this period was at least ten years long, and Mr. Crace is therefore entitled to all the relevant presumptions. *See, e.g.,* 20 C.F.R. § 727.203 (1996) (granting interim presumption to miners who have engaged in coal mine employment for at least ten years).

In 1971, Mr. Crace retired and began to collect Social Security retirement benefits. By this time, according to Mrs. Crace, he was very tired and suffered from a "little cough." At some point thereafter (the date is unknown), Mr. Crace filed for what is known as a "Part B" claim for Black Lung benefits with the Social Security Administration. The Administration denied this claim. Mr. Crace then filed a claim with the Department of Labor under Part C of the Act on August 4, 1977, claiming that he was totally and permanently disabled as a result of coal workers' pneumoconiosis, or "black lung."

An agency official initially granted Mr. Crace's claim, but then reversed this decision. Prior to a formal hearing on the merits of the claim, an administrative law judge dismissed the employer, Kentland–Elkhorn Coal Corp., as the respondent to the claim, on the theory that liability should have been transferred to the government through the Black Lung Disability Trust Fund. This ad-

* The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

ministrative law judge then awarded benefits to Mr. Crace based on the medical evidence available at the time. *See* Decision and Order Awarding Benefits (J.A. at 42).

The Benefits Review Board vacated the administrative law judge's decision, however, based on its conclusion that liability should not have transferred to the Trust Fund. As a result, it remanded the case to allow the coal company, which had not been a party to the proceeding after its dismissal, to defend the claim. *See* Decision and Order (J.A. at 37).

The Benefits Review Board made this first decision in May of 1986, nearly nine years after Mr. Crace's claim. It would take another nine and a half years before the case finally made it back up to the Board. In the meantime, various administrative law judges remanded the case to the agency several times. Mr. Crace died, in 1988, of metastatic lung cancer. (His death certificate lists metastatic lung cancer as the immediate cause of death, and pneumoconiosis "by history" as a significant contributing cause.) Mrs. Crace filed a survivor's claim, which the agency denied once in 1989 and twice in 1990.

Finally, Mrs. Crace's claims made their way back to an administrative law judge, who denied the claims on the merits. The Benefits Review Board affirmed, and this *pro se* appeal follows.

## I.

The first question we address is the Benefits Review Board's determination that the coal company is the proper respondent to this claim. Though the Board came to this conclusion over ten years ago, it was not a final judgment then and is reviewable on appeal now. *See Youghiogheny & Ohio Coal Co. v. Baker*, 815 F.2d 422, 424–25 (6th Cir. 1987) (holding that Board's decision that miner's claim did not transfer to the Black Lung Disability Trust Fund was not a final, appealable order where the Board also remanded for determination of the merits of the claim).

This procedural issue has a direct and somewhat unusual impact on the outcome of this case. The government concedes that if it is the proper respondent here, then benefits are due to Mrs. Crace, presumably because the first administrative law judge granted benefits to Mr. Crace when the government was a party. Br. of the Federal Respondent at 11. Because the government makes this concession, we need not determine whether and to what extent it would be legally bound by this first administrative law judge's adverse decision. As discussed below, we hold that there was substantial evidence for the most recent administrative law judge's conclusion that Mr. Crace was not disabled by—and did not die of—pneumoconiosis. Thus, if the liability for this claim should have transferred to the Black Lung Disability Trust Fund, Mrs. Crace must prevail. If the Board was correct in 1986 that liability should not transfer, however, we must deny her claims.

Title IV of the Federal Coal Mine Health and Safety Act of 1969 established two programs—Parts B and C—under which coal miners totally disabled by work-related pneumoconiosis could receive benefits. *See* 30 U.S.C. §§ 901–945 (1997). The date on which claims were filed determined whether they were adjudicated under Part B or Part C. Part B was a federally funded program, administered by the Social Security Administration, which governed all claims for benefits filed before January 1, 1973. Originally, Part C was a joint federal and state program, administered by the Department of Labor, which governed claims filed between January 1, 1973 (later postponed to January 1, 1974) and December 31, 1976.

Under amendments passed in 1977 and 1981, Congress created the Black Lung Liability Trust Fund, a government fund against which miners could make claims under certain circumstances. The legislation sought simultaneously to establish more lenient standards of eligibility for benefits and, where the miner did not qualify under the Trust Fund, to hold individual coal operators liable for claims arising from their operations. These provisions provide that "no benefit shall be payable by any operator on account of death or total disability due to pneumoconiosis ... which was the subject of a claim denied before March 1, 1978, and which is or has been approved in accordance

with the provisions of section 945 of this title." 30 U.S.C. § 932(c) (1997). In turn, 30 U.S.C. § 945 provides that all claims denied prior to March 1, 1978 were eligible for reopening and transfer to the Trust Fund. Review of pending or denied Part C claims was automatic. Review of pending or denied Part B claims was not automatic: The Secretary of the Department of Health and Human Services had to notify Part B claimants of their right to request review of their claims, and the claimants were then required to make an election to have either the Department of Labor or the Department of Health and Human Services review their claims.

Thus, to transfer to the Trust Fund, Mr. Crace's Part C claim must be a claim denied by March 1, 1978 and approved according to § 945. Unfortunately, Congress' definition of a "claim denied" is not a model of simplicity. Section 902(i) defines a "claim denied" as (1) a claim denied by the Social Security Administration; (2) a claim in which the Department of Labor notified the claimant of a denial before March 1, 1977 and the claimant did not seek a hearing before the March 1, 1978 cutoff; or (3) a claim that was denied before the March 1, 1978 cutoff (under pre-March 1, 1978 law) following a formal hearing or administrative or judicial proceeding. *See* 30 U.S.C. § 902(i). Recall that in order to transfer under § 932(c), one of these forms of denial must have occurred by March 1, 1978. We know that the Social Security Administration did not deny Crace's Part C claim. We also know that Mr. Crace filed the claim on August 4, 1977, so the Department of Labor could not have notified him by March 1, 1977. Finally, the record does not reflect a hearing or formal proceeding before the March 1, 1978 cutoff. Thus, Mr. Crace's Part C claim was not a "claim denied" by March 1, 1978, and cannot transfer to the Trust Fund under § 932.

■ The government acknowledges that Mr. Crace's part B claim is a "claim denied" and hence qualifies under the first part of § 932. However, it contends that because Crace did not make an election to have his Part B claim reviewed, it fails to qualify for transfer under § 945. We agree. The gov-

ernment points to computer data indicating that it sent an election card to Mr. Crace. *See* Previously Denied Part B Claims Locator excerpt (J.A. at 65). Mrs. Crace does not remember receiving such a card, however, and though she would not have seen all the mail sent to her post office box, she notes that Mr. Crace normally took care of his correspondences. Where letters have been properly sent, we presume that they have reached their destination in the usual time and have been received by the person to whom they were addressed. *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 418–19, 76 L.Ed. 861 (1932). *Cf. Carroll v. Commissioner,* 71 F.3d 1228, 1231 (6th Cir.1995) (acknowledging the common-law rule of *Hagner* in non-tax cases), *cert. denied,* —— U.S. ——, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996). The government's computer evidence entitles it to this presumption. Mrs. Crace's testimony that her husband normally took care of his correspondences does not adequately rebut it. Thus, we hold that Crace's Part B claim does not qualify for transfer to the Trust Fund, and the Board correctly substituted the coal company as the opposing party.

## II.

■ Having decided that the Board was correct when it vacated the first administrative law judge's decision and substituted Kentland–Elkhorn as the proper respondent, we address the merits of the Craces' claims. Our scope of review in appeals from the Benefits Review Board is limited to determining whether the Board "committed any legal errors or exceeded its statutory scope of review of the administrative law judge's factual determinations." *Director, Office of Workers' Compensation Programs, United States Dep't of Labor v. Quarto Mining Co.,* 901 F.2d 532, 536 (6th Cir.1990). The administrative law judge's findings of fact may only be set aside if they are not supported by "substantial evidence in the record considered as a whole." *Id.* Finally, the Sixth Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wright v. Island Creek Coal Co.,*

824 F.2d 505, 507–08 (6th Cir.1987) (quotation omitted). Thus, the scope of our review of the administrative law judge's review of the medical evidence is narrow.

■ Under the applicable regulations, a miner is presumed to be totally disabled due to pneumoconiosis, or to have died of pneumoconiosis, if he can demonstrate any of the following:

1. A chest X ray, biopsy, or autopsy establishes the existence of pneumoconiosis;

2. Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease according to certain criteria;

3. Blood gas study results are below certain disability criteria; or

4. Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment.

20 C.F.R. § 727.203(a) (1996). However, evidence that "establishes that the miner does not, or did not, have pneumoconiosis" rebuts this presumption. *Id.* § 727.203(b)(4). In addition, where the medical evidence demonstrates that the miner did not have pneumoconiosis, a survivor's claim also fails. *See id.* § 718.205(c)(1)–(2). In the instant case, the administrative law judge found, and the Board affirmed, that the evidence taken as a whole established that Mr. Crace did not have pneumoconiosis. We agree with the Board that the administrative law judge had substantial evidence on which to base this conclusion.

The medical evidence in this case is mixed. Mr. Crace's death certificate lists pneumoconiosis "by history" as a contributing factor, though it is clear that the immediate cause of his death was metastatic lung cancer. On the other hand, eleven board-certified radiologists, or B-readers, found no evidence of pneumoconiosis in Mr. Crace's X rays. Only one B-reader found the X rays positive, and the administrative law judge noted that this set of X rays was not among the most recent. *See* Decision and Order Denying Benefits at 8 (J.A. at 20). Though several of the pulmonary function studies fell below the disability standard, the most recent did not. The administrative law judge credited this one, noting that pneumoconiosis is a progressive disease. *Id.* at 10 (J.A. at 22). Though the earliest blood gas study results were below the disability level, the three others were well above. Dr. Mettu, a specialist in internal and pulmonary medicine, examined Mr. Crace and concluded that he did not have pneumoconiosis. Several other doctors, among them Drs. Tuteur, Renzitti, Broudy, and Fino, reached the same conclusion. It is true that this evidence is not uncontroverted, but the scope of our review is narrow, and the administrative law judge clearly had sufficient evidence on which to base his conclusion that Mr. Crace was not disabled by— and did not die as a result of—pneumoconiosis. As a result, Mrs. Crace is not entitled to benefits on either her survivor's claim or Mr. Crace's direct claim.

■ In this case, when the most recent administrative law judge finally reached the merits of the claim (the medical determination), his determination differed from that of the first administrative law judge. While this result may seem anomalous, the law allows such a result on the theory that every litigant is entitled to its day in court, and to defend itself by confronting witnesses and developing its own evidence and legal theories. Thus, because Kentland–Elkhorn was not a party to the first administrative law judge's resolution of this case, it is not bound by it. The Board correctly remanded the case to be reheard with the company substituted as the defending party. In this case, the passage of time also contributed to the changed outcome. Additional doctors examined Mr. Crace and his medical records. Recent evidence is particularly important in black lung cases, where because of the progressive nature of pneumoconiosis, more recent evidence is often accorded more weight. The most recent administrative law judge was presented with a new, more complete picture of Mr. Crace's health. His determination was supported by substantial evi-

dence. Thus, the decision of the Benefits Review Board is AFFIRMED.