**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CLINCHFIELD COAL COMPANY,
Petitioner,

v.

DEBRA ANN FULLER, widow of

Elmer L. Fuller, deceased;
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
Respondents.

No. 98-1949

On Petition for Review of an Order
of the Benefits Review Board.
(97-1204-BLA)

Argued: March 5, 1999

Decided: June 25, 1999

Before TRAXLER and KING, Circuit Judges, and
LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Petition for review granted, award vacated, and claim remanded by
published opinion. Judge King wrote the opinion, in which Judge
Traxler and Judge Lee joined.

_____

**COUNSEL**

**ARGUED:** Timothy Ward Gresham, PENN, STUART, ESKRIDGE
& JONES, Abingdon, Virginia, for Clinchfield Coal. Edward Wald-

man, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Director. Daniel H. Sachs, WIESENFELD & WALDMAN, P.C., Hyattsville, Maryland, for Fuller. **ON BRIEF**: Marvin Krislov, Deputy Solicitor for National Operations, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Director.

_____

**OPINION**

KING, Circuit Judge:

Clinchfield Coal Company petitions for review of the Decision and Order of the Benefits Review Board (BRB) upholding an award of black lung survivors' benefits to the respondent, Debra Ann Fuller, the widow of deceased coal miner Elmer Fuller.[1] An Administrative Law Judge (ALJ) determined that Mr. Fuller had been afflicted with pneumoconiosis arising out of his coal mine employment, and that the disease had hastened his death.

We conclude that the ALJ improperly evaluated the competing evidence regarding the extent to which Mr. Fuller's pneumoconiosis affected the pulmonary condition that contributed to his death. The BRB placed its imprimatur upon the ALJ's reasoning, but we cannot. We therefore grant the petition for review, vacate the award of benefits, and remand for further proceedings.

I.

A.

Black lung benefits may be paid to eligible survivors of a miner

_____

[1] The Director of the Office of Workers' Compensation Programs for the Department of Labor participates in this appeal as co-respondent, pursuant to 30 U.S.C. § 932(k), which provides that "[t]he Secretary [of Labor] shall be a party in any proceeding relative to a claim for benefits under this part [of the Black Lung Benefits Act]."

2

whose death was "due to pneumoconiosis," 20 C.F.R. § 718.205(a) (1998), i.e., where pneumoconiosis is "a substantially contributing cause or factor leading to the miner's death[.]" § 718.205(c)(2). The claimant will recover upon proving, by a preponderance of the evidence, that pneumoconiosis "actually hastened the miner's death." Shuff v. Cedar Coal Co., 967 F.2d 977, 979-80 (4th Cir. 1992).

Ms. Fuller filed her claim for survivors' benefits about a month after her husband's death in 1994 from "a final episode of respiratory and cardiac failure." Mr. Fuller had worked in the coal mines for over twenty years. X-rays taken during his lifetime never read positive for pneumoconiosis, but an autopsy revealed the presence of moderate anthracosis and numerous carbonaceous macules in both lungs.

The District Director denied the claim on initial review, and again upon Ms. Fuller's request for modification. The matter was subsequently referred to the Office of Administrative Law Judges for hearing, in anticipation of which an informal conference was scheduled to define the scope of the dispute. Ms. Fuller attended the conference with her attorney. Clinchfield, which had earlier controverted its liability for the claim, was also represented by counsel.[2]

At the conference, the parties were asked to respond to a "Stipulation of Uncontested and Contested Issues." The claims examiner produced a checklist of facts potentially in dispute and asked the parties to indicate whether they agreed or disagreed with the truth of each particular assertion. During this process, Clinchfield stipulated that Mr. Fuller "had pneumoconiosis (black lung) as defined by the Act and regulations," and that Mr. Fuller's affliction "was caused by coal mine employment." The parties could not agree, however, as to whether Mr. Fuller's death was "due to pneumoconiosis." The case proceeded before the ALJ to decide that precise question.

_____

[2] Clinchfield did acknowledge that it would be responsible if benefits were awarded. See 20 C.F.R. § 725.493(a)(1) (1998) (imposing liability for benefits on the mine operator or other qualifying employer with which the miner has had the most recent periods of cumulative employment of not less than one year).

B.

Ms. Fuller presented the statement of her husband's treating cardiologist, Dr. Harrison Turner, who opined that Mr. Fuller's "autopsy-proven" pneumoconiosis "increased the breathing workload of a heart already compromised by significant left ventricular dysfunction, further reducing air exchange and increasing the cardiac workload." At his deposition, Dr. Turner retreated from this position somewhat. Although he reiterated that death had come sooner to Mr. Fuller as the result of the latter's breathing impairment, Dr. Turner hesitated to attribute the poor condition of his patient's lungs to coal dust exposure, expressing his belief that such a diagnosis was better left to pulmonologists.

Dr. J. Randolph Forehand, who, some years earlier, had twice examined Mr. Fuller in connection with the miner's claim for black lung benefits, was considerably less equivocal. Upon reviewing his records and the autopsy report, Dr. Forehand concluded that

> [Mr. Fuller's] respiratory difficulties in life were due in part to coal workers' pneumoconiosis. . . . Because of the small residual ventilatory capacity remaining, he was unable to compensate for the effects of cardiac failure[,] thus his death was due to a combination of cardiac and respiratory factors including coal workers' pneumoconiosis.

Dr. Forehand acknowledged that cigarette smoking had adversely affected Mr. Fuller's respiratory capacity. He nonetheless held firm in his belief that pneumoconiosis was also to blame, stating that "[b]oth his coal workers' pneumoconiosis and pulmonary emphysema from cigarette smoking were . . . the cause of lack of respiratory compensation during terminal events in the hospital preceding death."

Clinchfield's experts took a different view. The company had four pathologists and three pulmonary specialists review the pertinent records; all concluded that Mr. Fuller had suffered from, at most, "mild" or "minimal" simple pneumoconiosis. None believed the disease to have contributed to his death. To the extent that these experts recognized Mr. Fuller to have a pulmonary disorder, it was attributed solely to cigarette smoking.

4

II.

A.

The ALJ credited Ms. Fuller's evidence, giving determinative weight to Dr. Turner's opinion. The opinions of Clinchfield's experts were deemed to be less probative, largely because the ALJ thought them contradictory to the company's stipulation that Mr. Fuller had pneumoconiosis "as defined by the Act and regulations." That definition states:

> For the purpose of the Act, pneumoconiosis means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment . . . . For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

20 C.F.R. § 718.201 (1998) (emphases added). The ALJ construed the words "including" and "includes" as words of limitation, i.e., as restricting the condition known as pneumoconiosis to those diseases that result in "impairment."

Because Clinchfield stipulated that Mr. Fuller had pneumoconiosis, the ALJ reasoned, it must also have stipulated that his pneumoconiosis was impairing. Insofar, then, as Clinchfield's experts had opined that Mr. Fuller's pneumoconiosis had not impaired his pulmonary function, those opinions were considered by the ALJ to be unworthy of credence. Cf. Warth v. Southern Ohio Coal Co. , 60 F.3d 173, 175 n.* (4th Cir. 1995) (expert opinions in direct conflict with the regulations promulgated under the Black Lung Benefits Act entitled to little, if any, weight).[3]

_____

[3] Although the BRB's Decision and Order only addressed at length its approval of the ALJ's reasons for crediting the opinion of Dr. Turner, the Board also implicitly endorsed the ALJ's analysis in discounting the opinions of Clinchfield's experts.

5

B.

The culprit in this case is a familiar one. The origin of this dispute can be traced to the failure of the parties and the ALJ to sufficiently distinguish between pneumoconiosis in its "clinical" and "legal" sense. Section 718.201 provides the legal definition of pneumoconiosis. It encompasses a wide variety of conditions; among those are diseases whose etiology is not the inhalation of coal dust, but whose respiratory and pulmonary symptomatology have nonetheless been made worse by coal dust exposure. See, e.g., Warth, 60 F.3d at 175 (remanding for potential award of benefits where exposure to coal dust may have aggravated the miner's chronic obstructive lung disease). The plain language of the regulation demands that these diseases result in some sort of respiratory or pulmonary impairment before they can be considered "pneumoconiosis."

The definition, however, also includes diseases that are or can be caused by coal dust inhalation. Any "chronic dust disease of the lung and its sequelae . . . arising out of coal mine employment" will qualify. Many of these diseases are specifically listed in the regulation. One is "coal workers' pneumoconiosis" -- often referred to as "clinical" or "medical" pneumoconiosis. Another is anthracosis. The autopsy revealed the presence of both of these diseases in Mr. Fuller's lungs, and this is what Clinchfield fairly stipulated to when it agreed that Mr. Fuller had pneumoconiosis "as defined by the Act and regulations."

Section 718.201 nowhere requires these coal dust-specific diseases to attain the status of an "impairment" to be classified as "pneumoconiosis." The definition is satisfied whenever one of these diseases is present in the miner at a detectable level; whether the particular disease exists to such an extent as to be compensable is a separate question.

It follows, then, that what Clinchfield stipulated to is not necessarily inconsistent with what its experts perceived. Although other reasons were recited for discounting the opinions of those experts, the imagined inconsistency played such a prominent role in the ALJ's analysis as to undermine our confidence in the correctness of his decision. We are, of course, bound to affirm the ALJ's ruling if it is in

6

accordance with law, and is supported by substantial evidence. <u>Piney Mountain Coal Co. v. Mays</u>, No. 97-2560, 1999 WL 274066, at *1 (4th Cir. May 5, 1999) (citations omitted). Here, though, the ALJ interpreted and applied the law incorrectly, casting doubt on whether substantial evidence supports the benefit award. We are therefore constrained to remand this matter to be considered anew.

It may be the case that, on remand, the opinions of Dr. Turner and Dr. Forehand will again carry the day for Ms. Fuller. The law nonetheless requires that these opinions be fairly and scrupulously measured against the competing views of Clinchfield's experts.

III.

The petition for review is accordingly granted. The award of benefits to Ms. Fuller is vacated, and this claim is remanded to the Benefits Review Board for further proceedings consistent with this opinion.

<u>PETITION FOR REVIEW GRANTED;
AWARD VACATED AND CLAIM REMANDED
FOR FURTHER PROCEEDINGS</u>

7