**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

LEWIS COAL COMPANY; OLD REPUBLIC
INSURANCE COMPANY,

*Petitioners,*

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
HERSHEL U. MCCOY,

*Respondents.*

No. 03-1425

On Petition for Review of an Order
of the Benefits Review Board.
(01-953-BLA)

Argued: February 25, 2004

Decided: June 24, 2004

Before WIDENER and DUNCAN, Circuit Judges, and
William D. QUARLES, Jr., United States District Judge
for the District of Maryland, sitting by designation.

Petition denied by published opinion. Judge Duncan wrote the opinion, in which Judge Widener and Judge Quarles joined.

## COUNSEL

**ARGUED:** Mark Elliott Solomons, GREENBERG TRAURIG, L.L.P., Washington, D.C., for Petitioners. Gary K. Stearman, Office

of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Laura Metcoff Klaus, GREENBERG TRAURIG, L.L.P., Washington, D.C., for Petitioners. Howard M. Radzely, Acting Solicitor of Labor, Allen H. Feldman, Associate Solicitor for Special Appellate and Supreme Court Litigation, Nathaniel I. Spiller, Deputy Associate Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Susan D. Oglebay, Castlewood, Virginia, for Respondent McCoy.

---

**OPINION**

DUNCAN, Circuit Judge:

Lewis Coal Company, Inc. and its insurer, Old Republic Insurance Company, petition for review of the final Decision and Order of the Benefits Review Board ("BRB") directing them to pay medical benefits to Respondent Hershel McCoy. McCoy is a former coal miner and employee of Lewis Coal adjudged to be totally disabled due to pneumoconiosis, a pulmonary condition commonly referred to as "black lung disease." The BRB directed that Lewis Coal reimburse McCoy for approximately $1800 in medical expenses that it concluded were related to his disability, based in large part on the presumption in this circuit that a miner applying for medical benefits may demonstrate his eligibility by showing that he has been adjudged to be disabled by pneumoconiosis. Because we find the challenges to the legal and evidentiary underpinnings of the BRB's Order to be meritless, the petition for review is denied.

I.

The essential facts underlying McCoy's medical benefits claim are as follows. McCoy ended his roughly twenty-year career as a coal miner in 1972, at the age of forty-three, due to "chest problems" he began experiencing in 1971. Before ending his employment with Lewis Coal, McCoy filed a disability claim with the Social Security Administration ("SSA") under Part B of the antecedent to the Black Lung Benefits Act (codified as amended at 30 U.S.C. § 901 et seq.)

("the BLBA").[1] Part B of the BLBA established a federally funded program administered by the SSA to provide monthly disability payments to miners who claimed to be totally disabled due to pneumoconiosis within the meaning of the BLBA on or before June 30, 1973. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 8-11 (1976) (discussing statutory history and organization of BLBA). Based on McCoy's claim and supporting medical evidence, the SSA concluded McCoy was totally disabled and awarded disability payments under Part B.

In 1978, Congress amended Part C of the BLBA, which established an industry-funded disability program administered by the Department of Labor ("DoL") for all BLBA claims filed on or after July 1, 1973. *Id.* As part of its 1978 amendments to Part C, Congress permitted miners with a Part B disability determination to file claims for "medical benefits only" under Part C.[2] *See Doris Coal Co. v. Director, Office of Workers' Comp. Programs*, 938 F.2d 492, 494 (4th Cir. 1991). The DoL designated Lewis Coal as the mine operator responsible for McCoy's disability, and thus responsible for covering McCoy's medical benefits payments. Although Lewis Coal initially contested McCoy's claim, it withdrew its challenge in 1981 and entered into a settlement agreement with McCoy. Significantly, the agreement stated that Lewis Coal "agrees to accept the . . . initial determination that the claimant, Herschel U. McCoy, meets the standards of total disability under the [BLBA]," and that it understood that the agreement "may be the basis for the issuance of an Award of Medical Benefits and Order to Pay Medical Benefits in this claim." J.A. 18.

---

[1]McCoy filed his application under the Federal Coal Mine Health and Safety Act of 1969, Pub. L. No. 91-173, 83 Stat. 792-98 (1969) ("the FCMHSA"). In 1972, Congress amended the FCMHSA and renamed it the Black Lung Benefits Act. *See* Black Lung Benefits Act of 1972, Pub. L. No. 92-303, 86 Stat. 150 (1972).

[2]The regulations governing Part C of the BLBA apply to all claims filed on or after July 1, 1973, whether for a disability determination or for medical benefits only. However, for the purposes of this appeal, references to Part C should be understood to be synonymous with a "medical benefits only" claim.

Lewis Coal paid McCoy's medical bills pursuant to the agreement until 1986, at which point Lewis Coal and its workers' compensation insurer, Old Republic Insurance Co. (collectively "Lewis Coal"), took the position that the bills reflected unnecessary treatment. Specifically, Lewis Coal alleged that McCoy's condition reflected "[n]o CWP [coal workers' pneumoconiosis] or Very Minimal Disease," and that pneumoconiosis present at those levels "rarely requires medical attention or interacts to exacerbate other health problems." J.A. 19. McCoy filed a complaint with the DoL regarding Lewis Coal's denial of benefits, which the DoL referred to an administrative law judge ("ALJ") for a hearing. At the hearing, McCoy presented evidence that the medical treatments for which he sought compensation under Part C were related to the disabling conditions on which his Part B award was based. In response, Lewis Coal presented medical evidence from several sources suggesting that McCoy no longer suffered from a Part B disability and that the pulmonary conditions for which he sought compensation were attributable to cigarette smoking rather than disabling pneumoconiosis. Applying this court's presumption in *Doris Coal* that "most pulmonary disorders are going to be related or at least aggravated by the presence of pneumoconiosis," 938 F.2d at 496, the ALJ concluded that Lewis Coal's medical evidence did not provide a basis for denying McCoy's continuing requests for medical benefits, and the BRB affirmed the ALJ's determination on that basis. Lewis Coal timely petitioned this Court for review.

II.

Our review of the BRB's order is limited. We review the BRB's decision to assess whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the BRB and ALJ are rational and consistent with applicable law. *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000) (internal quotation marks omitted). As presented in its petition for review, Lewis Coal's claims require once again that we assess whether the BRB "properly applied our precedent in *Doris Coal* to the facts at hand." *Gulf & Western Indus. v. Ling*, 176 F.3d 226, 231 (4th Cir. 1999).

## A.

Through *Doris Coal* and its progeny, this court has clarified the process by which a miner whose lung disease has been adjudged to be totally disabling under Part B may sustain a claim for medical benefits under Part C. In order to demonstrate his eligibility, the miner must show that the mine operator was responsible for his pneumoconiosis and that the particular medical expenses for which he seeks reimbursement were necessary to treat his disabling condition. *Doris Coal*, 938 F.2d at 495. An expense is deemed necessary to treat pneumoconiosis if the treatment "relates to *any* pulmonary condition resulting from or substantially aggravated by the miner's pneumoconiosis." *Id.* at 496 (emphasis added). In establishing this regime, this court presumed that "most pulmonary disorders are going to be related or at least aggravated by the presence of pneumoconiosis." *Id.* As a result, "when a miner receives treatment for a pulmonary disorder, a presumption arises that the disorder was caused or at least aggravated by the miner's pneumoconiosis." *Id.* at 496-97.

In practice, the *Doris Coal* presumption permits a miner to satisfy his initial burden of production regarding his eligibility for Part C benefits by presenting his underlying Part B award, which specifies the conditions and symptoms that were found to be disabling, and the expenses he claims are related to those conditions and symptoms. *Doris Coal*, 938 F.2d at 496. The mine operator may then rebut the presumption of relatedness by showing that a particular expense is actually: 1) "for a pulmonary disorder apart from those previously associated with the miner's disability"; 2) "beyond that necessary to effectively treat a covered disorder"; or 3) "not for a pulmonary disorder at all." *Ling*, 176 F.3d at 233. Throughout the process, however, the burden of persuasion as to relatedness remains with the miner. *Gen. Trucking Corp. v. Salyers*, 175 F.3d 322 (4th Cir. 1999).

As we have often stated, the *Doris Coal* presumption precludes a mine operator from attempting to rebut the presumption of relatedness by attacking the underlying Part B award. Permitting a mine operator to contest a Part C claim by requiring the miner to prove his qualifying disability would "place a significant burden on the Black Lung benefits system, increase litigation costs for all of the parties involved, and further delay important medical benefits that a miner

suffering from pneumoconiosis needs." *Doris Coal*, 938 F.2d at 497; *see also Ling*, 176 F.3d at 233-34. Consequently, "mine operators can only use subsequent proceedings to challenge the necessity of certain medical charges for the treatment of a pneumoconiosis related disorder or challenge medical charges not related to pneumoconiosis"; they may not "require the miner to prove again that he has pneumoconiosis each time he makes a claim for health benefits." *Doris Coal*, 938 F.2d at 497.

B.

In accordance with *Doris Coal*, McCoy presented evidence regarding his 1973 Part B disability determination and the treatment for which he sought reimbursement under Part C. Although neither McCoy nor Lewis Coal introduced a copy of McCoy's actual Part B award from the SSA that discussed the conditions and symptoms the SSA found to be totally disabling, *see Ling*, 176 F.3d at 233 (noting that "[i]n every such case, the specific symptoms associated with these disorders will be a matter of record, for it is these symptoms— shortness of breath, coughing, loss of stamina, etc.—that render the miner disabled to begin with"), the ALJ found that a copy of the award was unnecessary. Evidence submitted by both parties confirmed that doctors diagnosed McCoy as having chronic bronchitis as well as pneumoconiosis in 1971, immediately prior to his award of Part B benefits. Two evaluating physicians (including one of Lewis Coal's experts, Dr. Castle) confirmed this diagnosis. Furthermore, the medical evidence introduced by both parties indicated that chronic bronchitis could be precipitated by exposure to coal dust.

Based on evidence that McCoy's Part B award was predicated on both the presence of pneumoconiosis and McCoy's chronic bronchitis, the ALJ concluded that McCoy was entitled to reimbursement for any expenses related to either condition. After reviewing reports from several doctors identifying which office visits, treatments, and medications were necessary to treat chronic bronchitis or pneumoconiosis, the ALJ awarded McCoy benefits for some, but not all, of the medical expenses for which McCoy sought compensation under Part C.[3]

---

[3]There was ample evidence in the record that allowed the ALJ to attribute certain doctor visits and treatments to particular conditions and

### III.

Lewis Coal's first objection to the ALJ's reliance on *Doris Coal* concerns the effect of its settlement agreement with McCoy, through which Lewis Coal agreed to accept the "initial determination that [McCoy] meets the standards of total disability." J.A. 41. Lewis Coal argues that the settlement agreement does not give rise to the *Doris Coal* presumption because the agreement does not amount to a stipulation that McCoy has "legal" pneumoconiosis. In response, McCoy and the DoL argue that the agreement demonstrates both that Lewis Coal recognized McCoy's "legal" pneumoconiosis for purposes of his eligibility for Part C benefits and that further relitigation of this issue is foreclosed by the *Doris Coal* presumption. We agree.

### A.

As a threshold matter, we note that Lewis Coal's argument misapprehends the concept of "legal" pneumoconiosis. We have observed on several occasions that "legal" pneumoconiosis is a statutory term referring to any "'chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, *or substantially aggravated by*, dust exposure in coal mine employment.'" *Ling*, 176 F.3d at 231 (quoting and adding emphasis to 20 C.F.R. § 718.201 (2003)). The term is thus broader than "medical" or "clinical" pneumoconiosis, as "legal" pneumoconiosis also encompasses "diseases whose etiology is not the inhalation of coal dust, but whose respira-

---

symptoms, and therefore to parse which treatments were attributable to covered conditions and which were not. Specifically, Dr. Sherman reviewed a list of each of McCoy's claims and identified which reflected treatment for disabling pneumoconiosis that manifested as "'chronic bronchitis with recurrent infection, chronic cough and sputum production, and bronchial reactivity.'" J.A. 93. Additionally, Dr. Kurtz Alderman, McCoy's treating physician, stated that "'[y]ou can tell by the prescriptions given on each visit that certain medicines are for lung disease and other prescriptions for other problems,'" and listed specific medications as indicative of treatment for pulmonary conditions. J.A. 79. Where there was disagreement over whether a particular medication was appropriate for the treatment of McCoy's covered conditions, the ALJ accepted the evaluation of Lewis Coal's expert, noting that it appeared to conform with the description of that drug's purpose in medical texts.

tory and pulmonary symptomatology have nonetheless been made worse by coal dust exposure." *Clinchfield Coal Co. v. Fuller*, 180 F.3d 622, 625 (4th Cir. 1999). When the SSA determines that a miner is totally disabled by pneumoconiosis, it can only be because the miner has a form of "legal" pneumoconiosis that is disabling. *See id.* (noting that while the mere presence of clinical pneumoconiosis meets the statutory definition of "legal" pneumoconiosis, "whether the particular disease exists to such an extent as to be compensable is a separate question"); *Hobbs v. Clinchfield Coal Co.*, 917 F.2d 790, 791 n.1 (4th Cir. 1990).

Consequently, Lewis Coal's attempts to contest whether McCoy's chronic bronchitis is compensable by arguing that it may still contest the issue of "legal" pneumoconiosis is unavailing. In the settlement agreement, Lewis Coal conceded both that McCoy "meets the standards of total disability under the [BLBA]" and that the agreement "may be the basis for the issuance of an Award of Medical Benefits." J.A. 41. Because a miner cannot be found to be totally disabled under the BLBA without satisfying one of the statutory or regulatory definitions of pneumoconiosis, *see* 20 C.F.R. §§ 410.110(n); 410.490(b) (2003), the admission that McCoy "meets the standards of total disability," effectively establishes that all of the conditions and symptoms on which McCoy's Part B disability determination were based qualify as "legal" pneumoconiosis. *Cf. Island Creek Coal Co. v. Compton*, 211 F.3d 203, 209 (4th Cir. 2000) (noting that because the alternative regulatory definitions of "pneumoconiosis" are "various bases which *may* be sufficient for a finding of ['legal'] pneumoconiosis," it is the evidence in each particular case that is determinative of whether the miner has "legal" pneumoconiosis).

## B.

The *Doris Coal* presumption is usually triggered when the miner presents his Part B award, but McCoy did not do so here. As we stated in *Ling*, "[i]n each case where a miner seeks an award of medical benefits, there will be a prior adjudication of disability as the result of legal pneumoconiosis, comprising one or more pulmonary disorders"; as a result, the specific, compensable symptoms associated with these disorders will be a matter of record, as it is these symptoms "that render the miner disabled to begin with." 176 F.3d at 233.

Although the ALJ called the absence of McCoy's Part B award to the parties attention, neither McCoy nor Lewis Coal introduced a copy of the award. We must therefore determine whether there was an adequate factual basis for the presumption to arise.

We conclude that because McCoy produced sufficient evidence from which the ALJ could reasonably conclude that both medical pneumoconiosis and chronic bronchitis figured in the SSA's disability determination, the award itself was unnecessary. It is undisputed that x-rays taken prior to the SSA's disability determination under Part B revealed the presence of medical pneumoconiosis, and McCoy's medical records reflect a diagnosis of chronic bronchitis in 1971, also prior to the SSA's determination that he was totally disabled under Part B. The doctors representing McCoy and Lewis Coal stated that this chronic bronchitis was probably caused by McCoy's exposure to coal dust. The conclusion that McCoy's Part B award was based in part on his chronic bronchitis finds further support in the fact that Lewis Coal paid for treatments related to chronic bronchitis following its settlement with McCoy.

The medical evidence as well as the settlement agreement thus reasonably support the ALJ's conclusion that McCoy was totally disabled under the BLBA and that chronic bronchitis figured in that determination. Because the evidence qualifies as a predicate for the *Doris Coal* presumption, which forecloses relitigation of the underlying disability determination, Lewis Coal is limited to rebutting the presumption that attaches to McCoy's medical expenses related to chronic bronchitis by showing that the expenses were actually incurred to treat separate pulmonary disorder, were unnecessary, or were not for a pulmonary disorder at all. *See Ling*, 176 F.3d at 233.

Lewis Coal offered no such rebuttal, however, arguing instead that McCoy's chronic bronchitis was not a pulmonary condition to which the *Doris Coal* presumption could attach. This amounts to an attack on the SSA's apparent finding that chronic bronchitis comprised part of McCoy's "legal" pneumoconiosis as a categorical matter, and as we have previously stated, a proceeding under Part C for medical benefits is not an opportunity to require that the miner again prove that he has disabling "legal" pneumoconiosis. *Doris Coal*, 938 F.2d at 497. Moreover, the threshold creating the entitlement to Part C bene-

fits, "that the pulmonary condition treated be *merely aggravated* by the miner's pneumoconiosis," is low enough to permit the inclusion of most disorders and symptoms as compensable under Part C even if there is not perfect identity with those found to be disabling by the SSA under Part B. *Ling*, 176 F.3d at 233 (emphasis added). We therefore find that the ALJ properly found Lewis Coal's evidence incompetent to rebut the presumption that McCoy's treatments for chronic bronchitis were related to his Part B disability and thus compensable under Part C.

IV.

Lewis Coal's second objection offers a broader challenge to the *Doris Coal* presumption by arguing that the presumption constitutes an abuse of the doctrine of offensive collateral estoppel. Offensive collateral estoppel arises when a plaintiff attempts to prevent a defendant from relitigating issues previously litigated and lost by the defendant in an action brought by a different plaintiff. *See In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004). Recognizing the unfairness that can result to a defendant in that context, including the possibility that the defendant may not have fully litigated the issue of which the plaintiff seeks to preclude further litigation, the Supreme Court has circumscribed a plaintiff's ability to invoke the doctrine by admonishing district courts to foreclose its use where: 1) the plaintiff could have easily joined in the action against the defendant in the earlier action, (2) the defendant lacked an incentive in the prior action to defend the action fully and vigorously; (3) other decisions in different cases resolved the issue in the defendant's favor; or (4) the second action affords greater procedural opportunities to the defendant than the first, and the difference could be dispositive. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31, 332 (1979). Hence, a plaintiff's recourse to the doctrine must be limited to preventing a defendant from "relitigating a fact actually found against the defendant in prior litigation when the fact was critical and necessary to the judgment in the prior litigation, [provided] . . . application of the doctrine would not be unfair to the defendant." *In re Microsoft*, 355 F.3d at 326-27.

Lewis Coal contends that it had no legal interest in McCoy's Part B proceeding at the time it was decided because any award would be paid by the federal government. It therefore follows, according to

Lewis Coal, that it should not be precluded from challenging the merits of that proceeding now that its interests will be adversely affected by it.

Lewis Coal's characterization of the *Doris Coal* presumption as violative of the strictures on non-mutual offensive collateral estoppel, however, is a thinly veiled attempt to circumvent the consequences of the settlement to which it agreed. Contrary to its current assertions, Lewis Coal understood at the time it entered into the settlement agreement that it might form "the basis for the issuance of an Award of Medical Benefits and Order to Pay Medical Benefits in this claim." J.A. 41.[4] To the extent that Lewis Coal's current reluctance to pay McCoy's medical benefits stems from its concern regarding the validity of McCoy's Part B award, we note that the governing regulations would have permitted it to challenge the award before it began denying McCoy's requests for Part C benefits. *See* 20 C.F.R. §§ 410.473, 410.490(d) (2003).

Finally, Lewis Coal's insistence that the *Doris Coal* presumption implicates the fairness considerations limiting recourse to offensive collateral estoppel is misplaced. As we have noted above, the *Doris Coal* presumption is rebuttable; the burden of proof remains at all times with the miner. A mine operator who was not a party to the Part B proceeding may rebut the presumption of relatedness arising from a threshold showing of disability by demonstrating that the current expenses are unrelated to, or were unnecessary for, treating the disability. Lewis Coal's complaint that the *Doris Coal* presumption is irrebuttable as applied by the ALJ is inapposite, as in this particular case, Lewis Coal's evidence was almost exclusively and improperly focused upon challenging the existence of McCoy's disability vel non, rather than rebutting the presumption that McCoy's medical expenses were related to his medical pneumoconiosis and chronic bronchitis. In such a context, the fairness concerns implicit in the limitations on offensive collateral estoppel simply do not arise.[5]

---

[4]The fact that Lewis Coal initially paid McCoy's medical bills further supports this conclusion.

[5]As part of its offensive collateral estoppel discussion, Lewis Coal suggests that application of the *Doris Coal* presumption would be particu-

V.

Finally, we find little merit to Lewis Coal's contention that the ALJ's decision was not supported by substantial evidence because the ALJ failed to consider all relevant evidence. As indicated above, the ALJ considered all of Lewis Coal's evidence, but rejected any evidence suggesting that McCoy was no longer disabled, as it was required to under *Doris Coal*. *See* 938 F.2d at 497. Lewis Coal's experts opined that McCoy's clinical pneumoconiosis was "asymptomatic," and that his current chronic bronchitis could not be attributable to the inhalation of coal dust. However, little weight can be given to medical findings that conflict with the BLBA's implementing regulations, *see Warth v. S. Ohio Coal Co.*, 60 F.3d 173, 175 n.* (4th Cir. 1995), such as a finding that a miner's previously disabling clinical pneumoconiosis, which is a "progressive disease," 20 C.F.R. § 718.210 (2003), had become "asymptomatic."

Contrary to Lewis Coal's assertions, it is clear that the ALJ did not arbitrarily disregard or discount all of Lewis Coal's medical evidence. For example, in resolving a conflict regarding whether a particular medication, Vanceril, reflected treatment for a compensable condition, the ALJ noted that "[t]he 1988 [Physician's Desk Reference] substantiates Dr. Castle's statement. Thus the rebuttal is sufficient on the use of Vanceril." J.A. 32. Because we find the ALJ gave proper weight to all of the medical evidence present in the record, we find the determination that McCoy was eligible to receive reimbursement for medical expenses related to clinical pneumoconiosis and chronic bronchitis to be supported by substantial evidence.

---

larly unfair given that McCoy may have benefitted from the "interim presumption" that his pneumoconiosis arose from his exposure to coal dust, a presumption created by the "interim" regulations of 20 C.F.R. §§ 727.1 to 727.405 (1984). These regulations apply to BLBA claims filed before 1978 in which the miner has worked in coal mines for ten or more years. However, we have already resolved this issue. McCoy's claim, like that of the claimant in *Doris Coal*, was adjudicated under 20 C.F.R. § 410.490 (2003), which applies to claims filed before July 1, 1973, *see Doris Coal*, 938 F.3d at 434; *see also* 20 C.F.R. § 727.1(a). Hence, this circumstance does not distinguish McCoy's case from that in *Doris Coal*.

## VI.

Because we conclude that Lewis Coal's objections to the BRB's Decision and Order lack merit, Lewis Coal's petition for review is

*DENIED.*