CONSOLIDATION COAL COMPANY,
Petitioner,

v.

Albert A. BORDA; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 98–1109.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 30, 1998.

Decided March 15, 1999.

**ARGUED:** William Steele Mattingly, Jackson & Kelly, Morgantown, West Virginia, for Petitioner. Gregory C. Hook, Hook & Hook, Waynesburg, Pennsylvania, for Respondent Borda; Jill M. Otte, United States Department of Labor, Washington, D.C., for Respondent Director. **ON BRIEF:** Marvin Krislov, Deputy Solicitor for National Operations, Donald S. Shire, Associate Solicitor, Patricia M. Nece, for Appellate Litigation, United States Department of Labor, Washington, D.C., for Respondent Director.

Before WILKINS and NIEMEYER, Circuit Judges, and FRIEDMAN, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed in part and reversed in part by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WILKINS and Judge FRIEDMAN joined.

## OPINION

NIEMEYER, Circuit Judge:

Albert Borda was awarded black lung benefits on two merged claims, one filed in 1978 and the other filed in 1988. The Office of Workers' Compensation Programs ("OWCP") did not advise Consolidation Coal Company, the putative responsible coal mine operator, of the 1978 claim until after the 1988 claim was filed and never informed Consolidation Coal that the 1978 claim was still pending on reconsideration. Yet, in August 1996, the Administrative Law Judge awarded Borda benefits based in part on the conclusion that the 1978 claim remained viable. Consolidation Coal contends that it was denied due process by the OWCP's delay and failure to notify it of Borda's claim and urges us to dismiss it as the responsible operator and to direct the Black Lung Disability Trust Fund to pay Borda's benefits. Alternatively, Consolidation Coal challenges the award on the merits.

For the reasons that follow, we affirm the award of benefits, but, because the violation of Consolidation Coal's due process rights requires that it be dismissed as the responsible operator, we direct that benefits be paid to Borda by the Black Lung Disability Trust Fund.

I

The procedural history of this case reveals an unflattering account of the government's delay and mishandling in processing and adjudicating Albert Borda's black lung claims over the course of 18 years.

Borda labored in the coal mines for roughly 40 years, working for Consolidation Coal between 1968 and 1972. In 1972, Borda left the private sector and began work for the federal government as a federal mine inspector. He worked in that

capacity for the next 15 years until he retired completely in 1987.

On January 30, 1978, while working for the federal government, Borda first filed a claim for black lung benefits, based on radiographs indicating that he had pneumoconiosis. In April 1980, the OWCP denied Borda's claim, indicating that it had received no evidence that established any element of eligibility for benefits. Shortly thereafter, still in April 1980, Borda submitted documentation of his coal mine employment history and his pneumoconiosis diagnosis—both of which he had submitted with his original application. He also made arrangements for a clinic to send additional medical evidence to the OWCP.

Without acknowledging Borda's second submissions, the OWCP again denied Borda's claim on August 4, 1980, again indicating that it had no evidence that would establish eligibility for benefits. The OWCP's standard denial letter informed Borda of his right to submit additional evidence or to request a formal hearing within 60 days. It also advised Borda of his right to request reconsideration of the denial within one year based upon a change in condition or a mistake in the determination of fact. The denial letter further included a hand-typed additional notation stating that the OWCP would "reconsider" Borda's claim if he submitted certain medical and employment evidence.

On July 31, 1981—within one year of the OWCP's August 4, 1980 denial of his claim—Borda submitted documentation of his employment history and medical diagnosis, for the third time. His cover letter advised the OWCP as follows:

> I'm sorry that you found no evidence of my having worked in the underground coal mines....
>
> \*　\*　\*　\*　\*　\*
>
> I am enclosing a xerox copy of the work record I originally mailed you in Jan. 1978, plus the zero copy of my work record from all of the Coal Mining Employers, which was also sent in with my original claim.
>
> \*　\*　\*　\*　\*　\*
>
> Sir, this is ALL of my work record that had been mailed you, this was my record for all of my employable years, up to present. I have nothing more to send you. It is about 30 yrs. give or take a bit, all underground. Also, in the original claim, some medical evidence was sent also, stating that I do have Black Lung. I am sending you the xeroxed copies again, and have marked them with 3 red \* \* \* asterisks, will be easily picked up. Since 1980, you should have received more evidence from Fairmont Clinic.

In his letter, Borda also inquired whether, as a federal employee, he should file a federal workers' compensation claim and what the consequences of filing such a claim would be on his ability to work and to receive black lung benefits.

Borda never received an acknowledgment of or response to his 1981 letter. Over a year later, however, he received a form letter from the OWCP, stating that his file had been transferred from Washington, D.C. to Parkersburg, West Virginia. For several years, Borda assumed—given the two year delay in the original decision on his 1978 claim—that because he had heard nothing from the OWCP, his claim was being reconsidered. By 1985, however, suspecting that the government may have lost his file, Borda requested a copy of his claim file under the Freedom of Information Act. To Borda's dismay, the file that the OWCP sent him was nearly empty and did not contain his multiple submissions of documents evidencing his coal mine employment and pneumoconiosis.

Believing that his file had been lost, Borda filed a second claim for black lung benefits on April 26, 1988. In May 1988, the OWCP notified Consolidation Coal that it was the putative responsible operator on that claim. This was the first notice that

Consolidation Coal had received from the OWCP regarding *any* claim filed by Borda.

Treating the 1988 claim as though the 1978 claim were closed, the OWCP denied Borda's second claim on the same grounds that it had denied his first claim. Borda timely appealed, submitted additional medical evidence, and was given a hearing before an Administrative Law Judge ("ALJ") on March 1, 1994.

Until a day before the hearing, Consolidation Coal had been under the impression that it was contesting Borda's eligibility for benefits based on his 1988 claim standing alone. When it learned that Borda was proceeding as if the 1978 claim were still viable and pending on reconsideration by virtue of Borda's 1981 letter to the OWCP, Consolidation Coal objected on constitutional grounds, arguing that it had never received notice of the continued viability of Borda's 1978 claim which had been filed 16 years earlier. With the agreement of counsel, the ALJ proceeded with the hearing and admitted all of the evidence, despite the disagreement as to the status and effect of the 1978 claim and the sufficiency of notice provided to Consolidation Coal. The OWCP was not represented at this hearing.

In August 1996, over two years after the hearing and 18 years after the original claim was filed, the ALJ issued a 32–page opinion awarding benefits to Borda on the basis of both his 1978 claim and his 1988 claim merged together. The ALJ found that Borda's original claim was still alive because it concluded, for the first time, that Borda's 1981 letter constituted a request for modification of the OWCP's denial of the 1978 claim. In deciding the merits of Borda's claims, the ALJ concluded that under the regulations generally applicable to claims filed in 1978, but not those filed in 1988, the medical evidence was insufficient to rebut the presumption of eligibility to which Borda was entitled by virtue of the length of his coal mine employment and the filing date of his *original*

claim. In a footnote, the ALJ stated that Consolidation Coal was not prejudiced by the OWCP's failure to notify it of the continued viability of the original 1978 claim. The ALJ noted that during the hearing "there was no observable prejudice reflective of surprise or lack of substantive preparation by Employer's experienced and manifestly competent counsel." The ALJ noted further that both parties had agreed that the medical evidence "would be the same" whether or not the 1978 claim was still pending.

Consolidation Coal appealed the ALJ's decision to the Benefits Review Board (the "Board"), which affirmed the ALJ's ultimate conclusion on the merits of Borda's claim but clarified the proper legal standard. The Board rejected Consolidation Coal's claim that liability should transfer to the Black Lung Disability Trust Fund based on Consolidation Coal's lack of notice of the continued vitality of the 1978 claim.

On appeal from the Board's order dated December 10, 1997, Consolidation Coal makes four arguments: (1) because Borda was last employed by the federal government, he was required to seek workers' compensation under the Federal Employees Compensation Act before seeking black lung benefits from a private employer; (2) both the ALJ and the Board erred in concluding that Borda's 1981 letter constituted a valid request for reconsideration; (3) even if the 1978 claim remained open, the ALJ and the Board erred in concluding that the OWCP's delay in adjudicating the claim and notifying Consolidation Coal did not deny Consolidation Coal due process; and (4) the ALJ erred in its analysis of the medical evidence. We address these arguments *seriatim.*

II

As a threshold matter, Consolidation Coal contends that because Borda's most recent coal mine experience was his 15–year employment as a federal mine in-

spector, he has a claim against the federal government under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, which he must "exhaust" before seeking compensation for his occupational disease from a former private employer under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*

FECA provides that the United States will compensate a federal employee for disabilities "resulting from personal injury sustained while in the performance of his duty." 5 U.S.C. § 8102(a). And "injury" is defined to include a "disease proximately caused by the employment." 5 U.S.C. § 8101(5). Even if FECA provides benefits for pneumoconiosis, the statutory language does not mandate, or even suggest, that a potential FECA claimant *must* pursue a FECA claim before pursuing benefits under the Black Lung Benefits Act. While FECA does include an election of remedies section, *see* 5 U.S.C. § 8116(b), this provision only restricts a claimant's choice of remedies against the federal government, not his choice of remedies *as between* the federal government and a private employer.

Moreover, our case law does not support Consolidation Coal's contention that a claimant must seek recourse against the federal government under FECA before seeking recourse against a private employer under the Black Lung Benefits Act. Consolidation Coal has misconstrued the impact of *Eastern Associated Coal Corp. v. Director, OWCP ("Patrick")*, 791 F.2d 1129 (4th Cir.1986), and *Kopp v. Director, OWCP*, 877 F.2d 307 (4th Cir.1989), which mandate only that *if* a federal employee wishes to seek compensation *from the federal government* for pneumoconiosis, FECA is his exclusive remedy because Congress did not waive the federal government's sovereign immunity in enacting the Black Lung Benefits Act. *See Patrick*, 791 F.2d at 1131; *Kopp*, 877 F.2d at 309 n. 1 (interpreting and reaffirming *Patrick*). These cases do not support the proposition that the federal government precedes a private employer in the hierarchy of a claimant's potential compensation sources.

It is true, as we noted in *Patrick*, that if an individual were entitled to benefits both from his private employer under the Black Lung Benefits Act and from the federal government under FECA, the FECA benefits would offset the amount owed by the private employer. *See Patrick*, 791 F.2d at 1130 n. 1. But this does not mean that a miner must choose to seek relief from the government under FECA *instead of* or *before* seeking relief from his private employer under the Black Lung Benefits Act. On the contrary, a miner is free, consistent with the purposes of the Black Lung Benefits Act, to attempt to maximize his benefits by choosing to seek compensation first, or even exclusively, under the more generous statutory scheme.

### III

■ We turn now to the question of whether Borda's July 31, 1981 letter to the OWCP constituted a request for modification of the OWCP's earlier denial of benefits. The procedures governing modification requests under the Black Lung Benefits Act are incorporated from the Longshore and Harbor Workers' Compensation Act. *See* 30 U.S.C. § 932(a) (incorporating 33 U.S.C. § 922). Specifically, 20 C.F.R. § 725.310(a) provides:

> Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may, at any time before ... one year after the denial of a claim, reconsider the terms of an award or denial of benefits.

Courts have interpreted this inherently broad provision expansively, recognizing that black lung proceedings are by nature informal and that "the 'principle of finality' just does not apply to Longshore Act and black lung claims as it does in ordinary lawsuits." *Jessee v. Director, OWCP*, 5 F.3d 723, 725 (4th Cir.1993) (citing *Banks*

*v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 461–65, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968)). This informal procedure carries with it a requirement for flexibility. Accordingly, we have observed that a request for modification "need not meet formal criteria." *I.T.O. Corp. of Virginia v. Pettus*, 73 F.3d 523, 526 (4th Cir.), *cert. denied*, 519 U.S. 807, 117 S.Ct. 49, 136 L.Ed.2d 14 (1996). As Consolidation Coal concedes, "[t]here is no need for a smoking-gun factual error, changed conditions, or startling new evidence." *Jessee*, 5 F.3d at 725. A claimant's request for modification "may simply allege that the ultimate fact—disability due to pneumoconiosis—was mistakenly decided." *Id.*

We believe that Borda's 1981 letter meets this flexible standard. First, it was timely submitted, having been sent within one year of the August 4, 1980 denial of his claim. Second, it unambiguously expressed dissatisfaction with the claim examiner's prior findings that Borda had not worked in a coal mine and did not have pneumoconiosis. Borda wrote, "I'm sorry that you found no evidence of my having worked in the underground coal mines, and also that no proof of Black Lung can be proven." To point out the examiner's errors and to request reconsideration of the denial of benefits, Borda *again* enclosed copies of "my work record from all of the Coal Mining Employers" and "some medical evidence ... stating that I *do* have Black Lung. I am sending you the xeroxed copies *again*, and have marked them with 3 red * * * asterisks." (Emphasis added). Borda attempted to draw attention to mistakes the examiner had made by marking the resubmittals with red pen and highlighting the portions the examiner missed. Finally, Borda's letter enclosed evidence, albeit evidence that had been sent on prior occasions, which contradicted the OWCP's factual findings. A reasonable person reading Borda's 1981 letter with its enclosures would be put on notice that Borda was requesting reconsideration of the denial of his claim. *See Jessee*, 5 F.3d at 725. This conclusion is

but tressed by the individualized notation on the OWCP's August 1980 denial of Borda's claim, which stated that upon the submission of additional evidence, the claim would be "reconsider[ed]."

■ Consolidation Coal argues that the questions Borda posed at the end of the 1981 letter about whether to file a FECA claim and what effect such claim would have on his black lung claim indicate an intent to abandon his black lung claim. We cannot agree. On the contrary, those questions provide further evidence of Borda's intent to persist in pursuing his black lung claim; only someone interested in pursuing a black lung claim would care about how a workers' compensation claim could affect black lung relief.

■ Finally, Consolidation Coal argues that the OWCP's procedural actions dictate conclusively that the 1981 letter was not a request for modification. First, the OWCP failed to respond in any way to Borda's 1981 letter, and second, it denied the 1988 claim as a "duplicate" claim, indicating that the first claim had been closed and was not being reconsidered. *See* 20 C.F.R. § 725.309(c). To justify his current position that the 1981 letter *was* indeed a request for modification, the Director explains that he did not have the 1981 letter in Borda's file (although no one contests that it was sent at the time indicated). While an inconsistency is apparent, we cannot conclude that the Director's inaction in response to a letter, which he claims he did not have and the absence of which he cannot explain, demonstrates that the Director did not consider the letter a request for modification. Even if the absence of the letter from the government's file is attributable to bureaucratic bungling, that cannot strip Borda of his claim. The content and context of the letter itself, and not the Director's reaction to it, must govern whether it was a request for modification.

■ The legal effect of our conclusion that Borda's 1981 letter was a request for modification is that his original 1978 claim remained viable because it was pending on reconsideration. Accordingly, when Borda filed his second claim in 1988, that claim merged into his still pending 1978 claim. *See* 20 C.F.R. § 725.309(c). And the merged claim is governed by the Part 727 regulations applicable to the 1978 claim, as opposed to the Part 718 regulations which would have been applicable to the 1988 claim standing alone. *See id.; see also* 20 C.F.R. § 718.1(b). Under the Part 727 regulations, Borda was entitled to a presumption of eligibility,[1] placing on Consolidation Coal the burden of rebutting the presumption through one of four specified methods.[2] *See* 20 C.F.R. § 727.203(b). Had Borda's 1988 claim been considered independently, as Consolidation Coal expected, Borda would have had to establish each element of eligibility for benefits by a preponderance of the evidence. *See Robinson v. Pickands Mather & Co.*, 914 F.2d 35, 38 (4th Cir.1990); 20 C.F.R. § 718.2 (noting that the Part 718 regulations are generally applicable to all claims filed after March 31, 1980).

## IV

■ With this understanding of the procedural status of Borda's claims, we now turn to the question of whether the OWCP's delay in processing Borda's request for modification and its failure to notify Consolidation Coal of the continued viability of Borda's 1978 claim operated to deny Consolidation Coal due process of law.

Consolidation Coal contends that the government's dawdling unconstitutionally prejudiced it in two ways. First, it asserts that the government's delays in claims processing and notification effectively deprived Consolidation Coal of its ability to rebut the interim presumption of eligibility for benefits by establishing that Borda was performing his usual coal mine employment or comparable, gainful work as a mine inspector. *See* 20 C.F.R. § 727.203(b)(1). Second, Consolidation Coal contends that the same adjudication and processing delays also caused an unexpected and substantial shift in the burden of proof. *Compare* 20 C.F.R. §§ 718.202–04 *with* 20 C.F.R. § 727.203.

Without any explanation for its mishandling and delay, the OWCP "acknowledge[s] that significant time elapsed between Borda's July 1981 request for modification and the ultimate adjudication of that request," but it maintains that Consolidation Coal "had every opportunity to mount a meaningful defense." *Both* Consolidation Coal *and* Borda disagree. They contend that Consolidation Coal's opportunity to defend itself was so severely compromised by the government's failures to act that it was deprived of due process and that liability should be transferred to the Black Lung Disability Trust Fund.

■ As a preliminary matter, we address the Director's contention that because Consolidation Coal did not adequately raise its constitutional issues before the ALJ, we should do as the Board did and refuse to consider Consolidation Coal's due process claim insofar as it is based on the loss of opportunity to establish a § 727.203(b)(1) rebuttal. The Board chose not to address this claim because Consolidation Coal "did not specifically raise before the [ALJ] any issue of prejudice"

---

1. Consolidation Coal has stipulated that Borda is entitled to this presumption because chest x-ray evidence demonstrates that he suffers from simple coal workers' pneumoconiosis. *See* 20 C.F.R. § 727.203(a)(1).

2. Under § 727.203(b), an employer can rebut the presumption of eligibility by demonstrat-

ing that (1) the miner is still performing his usual coal mine work or comparable and gainful work; or (2) from a whole-man perspective, the miner is still capable of performing such work; or (3) the evidence rules out coal mine employment as a contributing cause of the miner's total disability; or (4) the miner does not have pneumoconiosis.

based on its inability to use the § 727.203(b)(1) rebuttal. We disagree with the Board's premise that Consolidation Coal did not adequately present its § 727.203(b)(1) based due process claim to the ALJ. Failure to articulate all the forms of prejudice that might have resulted from a lack of notice is not tantamount to a failure to present a claim that the lack of notice actually caused a violation of due process. This is especially true in this case, considering the unexpected and difficult circumstances under which Consolidation Coal appeared at the hearing. The OWCP gave *no notice* to anyone that it was still processing Borda's 1978 claim on motion for reconsideration. Consolidation Coal was only apprised of this situation by opposing counsel the afternoon before the hearing. More importantly, the ALJ was well aware that the crux of Consolidation Coal's request to transfer liability was a lack of notice given that he "reject[ed] Employer's contention that, because it did not receive notice until the eve of trial," liability should transfer to the Black Lung Disability Trust Fund. Accordingly, we conclude that Consolidation Coal's lack of notice due process claim was before the ALJ and that we must now consider whether its loss of the right to present a rebuttal under § 727.203(b)(1) *due to* lack of notice by the government was sufficiently prejudicial to constitute a violation of due process.

Quite recently we found government delay to have caused a violation of an employer's due process rights in a black lung proceeding. *See Lane Hollow Coal Co. v. Director, OWCP*, 137 F.3d 799 (4th Cir. 1998). Drawing upon core elements of procedural due process, such as the right to pre-deprivation notice and opportunity to be heard, *Lane Hollow* established a straight forward test for determining whether an employer is denied due process

by the government's delay in notification of potential liability: did the government deprive the employer of "a fair opportunity to mount a meaningful defense to the proposed deprivation of its property." *Id.* at 807.

It is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay. *Cf. Grigg v. Director, OWCP*, 28 F.3d 416, 420 n. 7 (4th Cir.1994) (noting that although it was "disgusted by the torpor of the administrative process," the court could not find a due process violation absent a showing of specific prejudice). In *Lane Hollow*, for example, the Department of Labor failed to notify an employer of its potential liability for 17 years after it could have given notice and 11 years after its own regulations required such notice, and the claimant died in the interim. We concluded that the government's protracted delay was the direct cause of the employer's inability to gather medical evidence from the miner to rebut the interim presumption under § 727.203(b)(3). This deprivation substantially impeded the employer's opportunity to mount a "meaningful defense." *Lane Hollow*, 137 F.3d at 807.

■ Similarly, we believe that the government's failure to notify Consolidation Coal, to act upon Borda's 1981 request for modification, and to schedule a hearing on Borda's 1978 claim in a timely manner deprived Consolidation Coal of a meaningful opportunity to defend itself under § 727.203(b)(1) by showing that Borda was still doing "comparable and gainful work" as a federal mine inspector.[3] Because Borda worked as a federal mine inspector until 1987, six years after making his 1981 request for modification, Consolidation Coal's inability to assert that defense to the 1978 claim is traceable solely to the

---

3. The fact that the Department of Labor's regulations do not require it to notify a responsible operator in a Part 727 case until an initial determination of eligibility is made, *see* 20 C.F.R. § 725.412, or the claimant requests

a formal hearing after the initial denial of his claim, *see* 20 C.F.R. § 725.410(d), cannot insulate the Department from the independent, constitutional requirements of due process.

government's troubling failure to process the modification request in a timely manner and to notify Consolidation Coal.

The Director responds that because the ALJ only awarded benefits for the period after Borda retired completely in 1987, Consolidation Coal received the full benefit of the § 727.203(b)(1) rebuttal. This argument fails to account for *all* of the beneficial effects of the (b)(1) defense for Consolidation Coal. If Consolidation Coal had been able to avoid liability on the 1978 claim through the (b)(1) rebuttal, then that claim would no longer have been pending, and the second claim filed in 1988 would have been adjudicated under the Part 718 regulations rather than the Part 727 regulations. *See* 20 C.F.R. § 725.309(c);*see also* § 718.1(b). Part 718 regulations place the burden of establishing eligibility to receive benefits on the claimant, denying him the presumption given him under Part 727 regulations. Consequently,Consolidation Coal was, in fact, further prejudiced by the delay-induced loss of its ability to defend against the 1978 claim with (b)(1) rebuttal.

██ The Director also attempts to minimize the prejudice suffered by Consolidation Coal by arguing that whether or not Borda would have continued to work if a timely hearing had been scheduled is speculative. But this invocation of possible outcomes is beside the point. As *Lane Hollow* makes clear, whether or not Consolidation Coal would actually have been able to prevail in employing a (b)(1) rebuttal is not dispositive:

[S]peculation about the would-have-been and could-have-been misconstrues the focus of our inquiry. In this core due process context, we require a showing that the notice was received too late to provide a fair opportunity to mount a meaningful defense; we do not require a showing of "actual prejudice" in the sense that there is a reasonable likelihood that the result of this claim would have been different absent the violation. The Due Process Clause does not create

a right to *win* litigation; it creates a right *not to lose* without a fair opportunity to defend oneself.

*Lane Hollow,* 137 F.3d at 807. Put simply, Consolidation Coal's first notice of the pendency of the 1978 claim 16 years after the claim was filed stripped it of a full and fair opportunity to defend itself in the manner that the statutory scheme at that time contemplated. Because this deprivation constitutes a violation of due process, we need not address Consolidation Coal's alternative contention that the shift in the burden between the Part 718 and the Part 727 regulations in and of itself denied it due process as well. Accordingly, it is appropriate to vacate the designation of Consolidation Coal as the responsible operator on Borda's claim. Because this leaves "no operator who is liable," we direct the Black Lung Disability Trust Fund to pay any award to Borda. 26 U.S.C. § 9501(d)(1)(B); *see also Lane Hollow,* 137 F.3d at 808 (transferring liability to the Black Lung Disability Trust Fund under similar circumstances).

V

Turning to the merits of the award of benefits to Borda, we affirm.

██ Consolidation Coal is correct in pointing out that the ALJ misapplied the standard for evaluating whether evidence establishes rebuttal of the interim presumption under § 727.203(b)(3). The ALJ required the employer to show that the miner had no respiratory or pulmonary impairment without permitting rebuttal on the alternative ground that any impairment was not *caused* by coal mine employment. The regulation provides that the presumption "shall be rebutted if . . . the evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment," 20 C.F.R. § 727.203(b)(3), and we have held that, to rebut the interim presumption under this prong, an employer must "rule out the *causal* relationship be-

tween the miner's total disability and his coal mine employment." *Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 123 (4th Cir.1984). An employer can accomplish this task with evidence that establishes *either* that the miner has no respiratory or pulmonary impairment of any kind, *see Grigg*, 28 F.3d at 419, *or* that such impairment was not caused in whole or in part by his coal mine employment, *see Lane Hollow*, 137 F.3d at 804. Nevertheless, the ALJ's mistake was of no moment because we review the Board's decision, and the Board correctly concluded that the medical evidence was insufficient for a § 727.203(b)(3) rebuttal under the proper standard.

The ALJ provided a detailed and organized summary of all of the doctors' opinions, examining the flaws in each one. He also carefully explained why he attributed greater weight to certain medical opinions, and, citing to evidence in the record, he "specifically addressed each medical opinion which disagreed with his ultimate conclusion." *Hobbs v. Clinchfield Coal Co.*, 45 F.3d 819, 820 (4th Cir.1995). We believe that he properly executed his duty in this case.

 Consolidation Coal maintains that the ALJ "erred by interpreting medical data and substituting his own conclusions for those of a physician." But this argument appears to misapprehend the ALJ's role. As we have noted previously in delineating the function of the ALJ, "[a]n ALJ hearing a claim under the Black Lung Benefits Act is empowered to make credibility determinations and to weigh the evidence presented. Moreover, as trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert." *Underwood v. Elkay Mining, Inc.*, 105 F.3d 946, 949 (4th Cir.1997) (omitting citations). In fact, it is the duty of the ALJ to "evaluate the evidence, weigh it, and draw his own conclusions." *Id.*

 It is well-established that "we must affirm the ALJ's factual findings and weighing of the medical evidence where these conclusions of the ALJ are supported by substantial evidence." *Hobbs*, 45 F.3d at 820 (citing *Thorn v. Itmann Coal Co.*, 3 F.3d 713, 718 (4th Cir.1993)). Our independent review of the record leads us to conclude that substantial evidence does support the ALJ's conclusion that the medical evidence was insufficient to rebut the presumption under § 727.203(b)(3).

### VI

In summary, on Borda's merged 1978 and 1988 claims, evaluated under the Part 727 regulations, we find no reason to overturn the Board's conclusion that Borda is entitled to black lung benefits. However, because the government's delay in processing Borda's request for reconsideration and its concomitant delay in notifying Consolidation Coal of the pendency of Borda's 1978 claim denied Consolidation Coal due process by severely impeding its ability to mount a meaningful defense, we vacate the designation of Consolidation Coal as the responsible operator. Because this leaves no responsible operator, we order the Black Lung Disability Trust Fund to pay Borda's benefits as awarded by the ALJ.

*IT IS SO ORDERED*