**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 04-1497**

SEA "B" MINING COMPANY,

Petitioner,

versus

CALVIN DUNFORD; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

Respondents.

_____

JAMES PHEMISTER, Professor,

Amicus Supporting Respondent Dunford.

On Petition for Review of an Order of the Benefits Review Board.
(03-495-BLA; 02-161-BLA)

Argued: November 30, 2005          Decided: June 27, 2006

Before MICHAEL and DUNCAN, Circuit Judges, and Walter D. KELLEY,
Jr., United States District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Timothy Ward Gresham, PENN, STUART & ESKRIDGE, Abingdon,
Virginia, for Petitioner.  Matthew L. Trinidad, WASHINGTON & LEE
UNIVERSITY, School of Law, Lexington, Virginia; Jeffrey Steven

Goldberg, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington D.C., for Respondents. **ON BRIEF:** Howard M. Radzely, Solicitor of Labor, Donald S. Shire, Associate Solicitor, Patricia M. Nece, Counsel for Appellate Litigation, Sarah M. Hurley, Attorney, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Federal Respondent. James M. Phemister, WASHINGTON & LEE UNIVERSITY, School of Law, Lexington, Virginia, Amicus Supporting Respondent Dunford.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

After twenty-two (22) years of litigation, respondent Calvin Dunford finally convinced an Administrative Law Judge ("ALJ") to award him black lung benefits pursuant to the Black Lung Benefits Act (the "Act"), 30 U.S.C. §§ 901 et seq. The Benefits Review Board (the "Board") affirmed the award of benefits, so the company that owns the mine in which respondent formerly worked, petitioner Sea "B" Mining Company, now appeals to this Court. Because our review of the record discloses that the Board's decision was based on substantial evidence and applied the proper standards, we affirm.

I.

Dunford concluded a 32-year career as a coal miner in February 1979. He filed his first claim for black lung benefits in August of that year. By Decision and Order dated October 1981, ALJ Nicodemo De Gregorio denied Dunford's claim. The Board affirmed this denial. Dunford v. Jewell Ridge Coal Corp., No. 81-2205-BLA (BRB Sept. 28, 1984).

A claimant may file a new petition for modification within one year of the denial of the claimant's previous modification petition, Betty B. Coal Co. v. Director, OWCP, 194 F.3d 491, 498 (4th Cir. 1999); see 20 C.F.R. § 725.310(a), and customary principles of finality do not apply to claims for black lung

3

benefits, <u>Consolidation Coal Co. v. Borda</u>, 171 F.3d 175, 180 (4th Cir. 1999); <u>Jessee v. Director, OWCP</u>, 5 F.3d 723, 725 (4th Cir. 1993). Dunford took advantage of this lenity to file in April 1985 a new claim for benefits, which was treated as a request for modification. Almost five years later, in January 1990, ALJ John S. Patton issued a Decision and Order denying Dunford's request for modification. The Board and this Court affirmed ALJ Patton's decision. <u>See</u> <u>Dunford v. Jewell Ridge Coal Corp.</u>, No. 92-2071 (4th Cir. Sept. 3, 1993) (unpublished); <u>Dunford v. Jewell Ridge Coal Corp.</u>, No. 90-645-BLA (BRB Jan. 28, 1992).

Dunford sought benefits again in December 1993 when he requested modification on the basis of "new evidence of a worsening medical condition." ALJ De Gregorio denied Dunford's modification request in May 1996, but the Board vacated his Decision and Order and remanded the case for further consideration. <u>See</u> <u>Dunford v. Jewell Ridge/See "B" Mining Co.</u>, No. 96-1085-BLA (BRB May 16, 1997).

On remand, Dunford's case was reassigned to ALJ Anne B. Torkington. Like the ALJs before her, ALJ Torkington assessed plaintiff's claims under the "interim regulations" of the Act, 20 C.F.R. §§ 727.1 through 727.405. As the claimant, Dunford bore the initial burden of proving entitlement to an interim presumption that he is totally disabled due to pneumoconiosis arising from his coal mine employment. <u>See</u> 20 C.F.R. § 727.203(a); <u>Lane Hollow Coal</u>

4

Co. v. Director, OWCP, 137 F.3d 799, 803 (4th Cir. 1998). Once Dunford established entitlement to the interim presumption, Sea "B" bore the burden of rebuttal.[1] See 20 C.F.R. § 727.203(b); Lane Hollow Coal Co., 137 F.3d at 803. Sea "B" could rebut the interim presumption by establishing that:

(1) the miner is doing his usual coal mine work or comparable and gainful work;

(2) the miner is able to do his usual coal mine or comparable work;

(3) the total disability of the miner did not arise in whole or in part out of his coal mine employment; or

(4) the miner does not have pneumoconiosis.

20 C.F.R. § 727.203(b).

ALJ Torkington denied Dunford's claim for benefits in a Decision and Order on Remand issued in February 1998. ALJ Torkington found that while Dunford was entitled to the interim presumption, Sea "B" successfully rebutted that presumption pursuant to 20 C.F.R. § 727.203(b)(3) by proving that Dunford's respiratory impairment and disability did not arise in whole or in part from his coal mine employment. ALJ Torkington further found that Dunford did not suffer from pneumoconiosis, thus rebutting the presumption pursuant to 20 C.F.R. § 727.203(b)(4).

ALJ Torkington based her rulings on the opinions of Sea "B"'s expert physicians: Gregory J. Endres-Bercher, M.D., Kirk E.

---

[1]Only rebuttal pursuant to 20 C.F.R. §§ 727.203(b)(3) and (b)(4) is at issue in the present appeal.

Hippensteel, M.D., J. Dale Sargent, M.D., and Gregory J. Fino, M.D. Each employer physician opined that Dunford did not have pneumoconiosis and that his employment in the coal mines did not contribute to his respiratory impairment. ALJ Torkington noted that Dr. Sargent examined Dunford on two occasions and reviewed his past medical history. ALJ Torkington further noted that Dr. Fino had the opportunity to review Dunford's entire medical record while Dunford's expert physician, Corrado Ugolini, M.D., did not review any of Dunford's pre-1988 medical records. It was during 1988 that Dunford underwent a lobectomy to remove a cancerous portion of his lung. ALJ Torkington found that Dunford did not show any respiratory impairment in the time period between his departure from coal mine employment in 1979 and his lung surgery in 1988.

Additionally, ALJ Torkington found the opinions of Dunford's expert physicians, including Emory H. Robinette, M.D. and L. Dow Strader, M.D., to be unpersuasive and equivocal concerning the cause of Dunford's respiratory impairment. ALJ Torkington noted that another of Dunford's expert physicians, Dr. V. D. Modi, had diagnosed Dunford as suffering from disabling pneumoconiosis "despite blood gas and pulmonary function studies with values which exceed those set forth in the regulations indicating total disability."

ALJ Torkington stated in her decision that Sea "B"'s expert physicians, Drs. Fino, Sargent, Endres-Bercher, and Hippensteel,

had excellent qualifications and possessed considerable experience and expertise. She found that these doctors "presented better reasoned and documented medical opinions" than did Dunford's expert physicians. ALJ Torkington concluded that the evidence in the record demonstrated "a slight improvement" in Dunford's condition, rather than a deterioration.

After the Board affirmed ALJ Torkington's Decision and Order on Remand denying Dunford's claim for benefits, Dunford v. Jewell Ridge/Sea "B" Mining Co., No. 98-0704-BLA (BRB Feb. 18, 1999), Dunford filed yet another request for modification of the denial of his claim. This time he found success. In October 2001, yet another ALJ, Alice M. Craft, issued a Decision and Order Awarding Benefits on Modification. In the course of ruling that Dunford was entitled to benefits beginning in June 1987, ALJ Craft found that ALJ Torkington made a mistake in fact[2] when she found that Sea "B"

_____

[2]The ALJ's are not required to defer to each other's decisions. The "modification procedure is extraordinarily broad, especially insofar as it permits the correction of mistaken factual findings." Betty B. Coal Co., 194 F.3d at 497. The ALJ has "broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted." Jessee, 5 F.3d at 724 (quoting O'Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 256 (1971)); see also Betty B. Coal Co., 194 F.3d at 497.
    The ALJ may correct any mistake of fact, including the ultimate issue whether the claimant is eligible for benefits. Betty B. Coal Co., 194 F.3d at 497; see Jessee, 5 F.3d at 724-25 & n.2. "There is no need for a smoking-gun factual error, changed conditions, or startling new evidence." Jessee, 5 F.3d at 725; see also Borda, 171 F.3d at 181. The "claimant may simply allege that the ultimate fact -- disability due to pneumoconiosis -- was mistakenly decided." Jessee, 5 F.3d at 725; see also Borda, 171

had rebutted the interim presumption pursuant to 20 C.F.R. §§ 727.203(b)(3) and (b)(4). Specifically, ALJ Craft determined that ALJ Torkington made a mistake in fact in finding rebuttal pursuant to 20 C.F.R. § 727.203(b)(3) because Sea "B" had failed to rule out the causal relationship between Dunford's total disability and his coal mine employment.

ALJ Craft also found that ALJ Torkington made a mistake in fact by finding rebuttal under 20 C.F.R. § 727.203(b)(4) because Sea "B" had failed to establish that Dunford did not suffer from "legal pneumoconiosis." ALJ Craft concluded that Sea "B" did not meet its burden of rebuttal because the opinions of Drs. Fino and Ugolini were in "equipoise" concerning the presence of "legal pneumoconiosis." In the alternative, ALJ Craft found that ALJ Torkington made a mistake in fact by finding an absence of "legal pneumoconiosis" because employer expert physician Dr. Fino's opinion on the subject was "hostile" to the Act.

Sea "B" appealed to the Board, which affirmed ALJ Craft's award of benefits to Dunford but vacated her finding concerning the commencement date of that award. See Dunford v. Sea "B" Mining Coal Co., No. 02-0161-BLA (BRB Oct. 30, 2002). On remand, ALJ Craft determined that Dunford was entitled to benefits beginning in August 1988. Sea "B" appealed to the Board, which affirmed ALJ

---

F.3d at 181.

8

Craft's Decision and Order on Remand. See Dunford v. Sea "B" Mining Coal Co., No. 03-0495-BLA (BRB Feb. 25, 2004). Sea "B" now appeals to this Court.

II.

It is well established that our review of the Board's Decision and Orders is limited. See Lewis Coal Co. v. Director, OWCP, 373 F.3d 570, 575 (4th Cir. 2004). We conduct an independent review of the record to determine whether the Board correctly found that the ALJ's factual findings were supported by substantial evidence in the record. Consolidation Coal Co. v. Held, 314 F.3d 184, 186 (4th Cir. 2002); Scott v. Mason Coal Co., 289 F.3d 263, 267 (4th Cir. 2002); Island Creek Coal Co. v. Compton, 211 F.3d 203, 207 (4th Cir. 2000). "Substantial evidence is more than a mere scintilla." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); see also Compton, 211 F.3d at 207-08; Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 756 (4th Cir. 1999); Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). Rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co., 305 U.S. at 229; see also Scott, 289 F.3d at 267; Compton, 211 F.3d at 208; Mays, 176 F.3d at 756.

In conducting our review of the ALJ's decision for substantial evidence, we must "uphold decisions that rest within the realm of

9

rationality." Mays, 176 F.3d at 756. We may not reweigh the evidence, substitute our judgment for that of the ALJ, or set aside an inference merely because we find the opposite conclusion more reasonable or because we question the factual basis. See id.; Lane v. Union Carbide Corp., 105 F.3d 166, 170 (4th Cir. 1997); Doss v. Director, OWCP, 53 F.3d 654, 659 (4th Cir. 1995). We review the ALJ's findings to determine whether the ALJ considered all relevant evidence and sufficiently explained her rationale in crediting certain evidence. Bill Branch Coal Corp. v. Sparks, 213 F.3d 186, 190 (4th Cir. 2000); Milburn Colliery Co., 138 F.3d at 528; see Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

In particular, we must defer to the ALJ's evaluation of the proper weight to accord conflicting medical opinions. Lane, 105 F.3d at 172; Stiltner v. Island Creek Coal Co., 86 F.3d 337, 342 (4th Cir. 1996). However, we review de novo the ALJ's and Board's conclusions of law to determine whether they are rational and consistent with applicable law. Milburn Colliery Co., 138 F.3d at 528; see Held, 314 F.3d at 186; Compton, 211 F.3d at 208.

III.

Sea "B" does not dispute in this appeal that Dunford established the interim presumption pursuant to 20 C.F.R. § 727.203(a)(2) by producing ventilatory studies which established

10

the presence of a chronic respiratory or pulmonary impairment. Sea "B" instead argues that ALJ Craft erred when she ruled that ALJ Torkington made a "mistake in fact" in determining that Sea "B" had successfully rebutted the interim presumption pursuant to 20 C.F.R. §§ 727.203(b)(3) and (b)(4). Sea "B" asserts, among other things, that ALJ Craft failed to consider all the relevant evidence in the record and that her findings are not supported by substantial evidence, are not rational, and are not in accordance with the applicable law. Sea "B" further contends that ALJ Craft incorrectly determined August 1988 to be the commencement date for Dunford's benefits. Sea "B"'s arguments are unpersuasive.[3]

A.   Rebuttal of the Interim Presumption

1.   Rebuttal under subsection 203(b)(3)

Rebuttal of the interim presumption under 20 C.F.R. § 727.203(b)(3) is difficult. Lane Hollow Coal Co., 137 F.3d at 804; Grigg v. Director, OWCP, 28 F.3d 416, 418 (4th Cir. 1994). To carry its burden of rebutting the presumption, Sea "B" was required to rule out the causal relationship between Dunford's total disability and his coal mine employment. Borda, 171 F.3d at 184-

_____

[3]The Director, Office of Workers' Compensation Programs, has filed a brief in support of ALJ Craft's determination that Dunford is entitled to black lung benefits as of August 1988 and her decision to discredit Dr. Fino's opinion concerning the absence of legal pneumoconiosis as "hostile" to the spirit of the Act. The Director takes no position on the merits of Dunford's claim.

85; Lane Hollow Coal Co., 137 F.3d at 804; Grigg, 28 F.3d at 418. Sea "B" could have accomplished this task with evidence proving either that Dunford "has no respiratory or pulmonary impairment of any kind . . . or that such impairment was not caused in whole or in part by his coal mine employment." Borda, 171 F.3d at 185.

Substantial evidence supports ALJ Craft's determination that Sea "B" failed in this difficult task. As an initial matter, ALJ Craft understandably could not reconcile the various conflicting opinions of Sea "B"'s expert physicians. In November 1979, employer expert physician Dr. Hippensteel questioned whether Dunford suffered from coal workers' pneumoconiosis and determined that he had only "minimal pulmonary impairment." In a June 1980 deposition, Dr. Hippensteel testified that Dunford did not suffer from any pulmonary disability due to lung disease, regardless of its etiology. In June 1987, employer expert physician Dr. Endres-Bercher found no evidence of pulmonary impairment due to coal dust exposure, cigarette smoking, or "any other etiologic factor."

Another employer expert physician, Dr. Fino, contradicted Drs. Hippensteel's and Endres-Bercher's conclusion that Dunford had no pulmonary impairment. In an April 1989 report, Dr. Fino diagnosed Dunford as suffering from both a "restrictive" and an "obstructive" respiratory impairment.[4] Dr. Fino determined that Dunford's

---

[4]A restrictive lung disease diminishes the patient's ability to inhale air into the lungs, whereas an "obstructive" disease diminishes the patient's ability to expel air from the lungs. Gulf

12

restrictive impairment was caused by Dunford's lobectomy and not by exposure to coal dust.[5]  Dr. Fino concluded that Dunford's "mild obstructive ventilatory defect" was not related to industrial bronchitis or coal dust inhalation because those conditions result in "irreversible" airway obstruction, whereas Dunford's condition showed signs of reversibility.  While Dr. Fino was unsure whether Dunford's obstructive impairment was related to his prior history of smoking cigarettes, he concluded that Dunford's obstructive impairment "may very well be related to the development of asthma," which results in a reversible airway obstruction.

A fourth employer expert physician also contradicted Drs. Hippensteel's and Endres-Bercher's conclusion that Dunford had no pulmonary impairment.  In a May 1989 medical report, employer expert physician Dr. Sargent diagnosed Dunford as suffering from a "moderate" ventilatory impairment, but attributed it to Dunford's previous lung surgery and not the result of coal dust exposure.  In October 1994, Dr. Sargent concluded that Dunford now suffered from "very minimal, if any," respiratory impairment, which he attributed

_____

& W. Indus. v. Ling, 176 F.3d 226, 229 n.6 (4th Cir. 1999).  An obstructive impairment can be caused by coal mine employment.  See 20 C.F.R. § 718.201(a)(2); Stiltner, 86 F.3d at 341; Warth v. S. Ohio Coal Co., 60 F.3d 173, 174-75 (4th Cir. 1995).

[5]In September 1988, a lobe of Dunford's right lung was removed as part of his treatment for lung cancer (adenocarcinoma).  Dr. Sargent, Dr. Fino, and James R. Castle, M.D., opined that there is no evidence linking lung cancer to coal dust exposure.  Dunford does not challenge their opinions concerning the lack of such a causal link.

to Dunford's prior lung surgery.  In a May 1995 deposition, Dr. Sargent testified that Dunford suffered from a "mild resting hypoxemia" respiratory impairment that resulted from Dunford's lobectomy.

In a June 2000 medical report, employer expert physician Dr. Castle stated that there was no evidence that Dunford suffered from a restrictive respiratory impairment.  However, Dr. Castle did diagnose Dunford as suffering from an "obstructive" respiratory impairment.  Specifically, Dr. Castle opined that "Dunford may be permanently and totally disabled as a result of his mild, partially reversible airway obstruction."  Dr. Castle determined that Dunford's obstructive impairment was most likely related to his asthmatic bronchitis and "contributed to somewhat" by his prior history of smoking.[6]

In deposition testimony, Dr. Castle described Dunford's obstructive respiratory impairment as "a mild significantly reversible respiratory impairment that is related to his previous tobacco smoking history and asthmatic bronchitis."  Dr. Castle concluded that Dunford's obstructive impairment was not related to his coal dust exposure.

---

[6]The various medical reports indicate that Dunford smoked approximately one pack of cigarettes per day for about 20 years. Dunford ceased smoking in 1962, 15 years before he quit working in the coal mines.

ALJ Craft discredited Dr. Castle's attribution of Dunford's cigarette smoking history as a partial cause of his obstructive respiratory impairment. ALJ Craft explained that she had "difficulty accepting" Dr. Castle's explanation concerning the causation of the obstructive impairment because Dunford had ceased smoking tobacco 15 years before he quit his coal mine employment and removed himself from the accompanying exposure to coal dust. Because Sea "B" was unable to explain fully the cause of Dunford's obstructive impairment, ALJ Craft appropriately concluded that Sea "B" had failed to rule out the causal relationship between Dunford's total disability and his coal mine employment.

ALJ Craft's conclusion is supported by the 1995 medical report of Dunford's expert physician, Dr. Ugolini. In his report, Dr. Ugolini noted that "the National Institute for Occupational Safety and Health (NIOSH) is of the opinion, based on available scientific data, that coal mine dust causes obstructive lung disease, bronchitis with or without significant obstruction, and emphysema."[7] Dr. Ugolini opined that the "notion that coal dust produces only the classic restrictive pattern of lung disease is now obsolete, in light of the current epidemiological research." Dr. Ugolini stated that "[c]umulative coal dust exposure" in the amount suggested by Dunford's employment history is "well known to

---

[7]Dunford had been diagnosed as suffering from, among other things, chronic obstructive pulmonary disease, emphysema, and asthmatic bronchitis.

15

cause pulmonary impairment similar to the one found in Mr. Dunford."  Dr. Ugolini concluded that while Dunford's "remote" smoking history was the "only other exposure" that could possibly have contributed to Dunford's obstructive lung disease, it was his opinion to a reasonable degree of medical certainty that Dunford's exposure to coal dust "significantly contributed" to Dunford's obstructive impairment, chronic bronchitis, and emphysema.

Dr. Ugolini's report and the internally contradictory opinions of Sea "B"'s experts provide substantial evidence to support ALJ Craft's determination that Sea "B" did not rebut the interim presumption under 20 C.F.R. § 727.203(b)(3) because it could not show that Dunford had no respiratory or pulmonary impairment of any kind or that such impairment was not caused in whole or in part by his coal mine employment.  See Borda, 171 F.3d at 185.

### 2.  Rebuttal under subsection 203(b)(4)

Substantial evidence also supports ALJ Craft's determination that Sea "B" failed to rebut the interim presumption under 20 C.F.R. § 727.203(b)(4) by showing an absence of "legal pneumoconiosis."[8]  ALJ Craft considered the conflicting opinions of

---

[8]The Act defines "pneumoconiosis" as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment.  This definition includes both medical, or 'clinical', pneumoconiosis and statutory, or 'legal', pneumoconiosis."  20 C.F.R. § 718.201(a).  The Act defines "legal pneumoconiosis" as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment.

Drs. Fino and Ugolini, both of whom addressed the issue of whether Dunford suffered from "legal pneumoconiosis." ALJ Craft examined the physicians' curriculum vitae and found that employer expert physician Dr. Fino's credentials did not entitle his opinions to any greater weight than those of Dunford's expert physician, Dr. Ugolini. ALJ Craft noted that the research publications of Dr. Fino did not appear to concern pneumoconiosis whereas Dr. Ugolini was associated with NIOSH when that organization conducted studies concerning the relationship between chronic lung disease and coal dust exposure. Because ALJ Craft found the physicians' opinions to be "equally documented with reference to pertinent studies," she concluded that their opinions were, at best, in "equipoise." ALJ Craft thus properly determined that Sea "B" had failed to carry its burden of rebutting the interim presumption pursuant to 20 C.F.R. § 727.203(b)(4).

In the alternative, ALJ Craft discredited certain of Dr. Fino's opinions that she determined to be "hostile" to the Act. An ALJ may properly discount an expert physician's opinion as "hostile" to the Act when the opinion is based on a premise that is

---

This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). The term "legal pneumoconiosis" is broader than "medical" or "clinical" pneumoconiosis because it "also encompasses 'diseases whose etiology is not the inhalation of coal dust, but whose respiratory and pulmonary symptomatology have nonetheless been made worse by coal dust exposure.'" Lewis Coal Co., 373 F.3d at 577 (quoting Clinchfield Coal Co. v. Fuller, 180 F.3d 622, 625 (4th Cir. 1999)).

fundamentally at odds with the statutory and regulatory scheme. See Lewis Coal Co., 373 F.3d at 580; Mays, 176 F.3d at 760 n.7; Lane, 105 F.3d at 173; Warth v. S. Ohio Coal Co., 60 F.3d 173, 174 n.* (4th Cir. 1995); Thorn v. Itmann Coal Co., 3 F.3d 713, 719 (4th Cir. 1993). Dr. Fino's opinion that Dunford does not suffer from legal pneumoconiosis was based on two premises that are hostile to the Act.

First, Dr. Fino concluded in a June 1995 medical report that Dunford's obstructive impairment could not be attributed to coal dust inhalation because he did not have any ventilatory impairment when he left his employment in the mines in 1979. Dr. Fino stated that "[i]f a miner has no functional impairment due to coal mine dust inhalation at the time he leaves the mines, then that worker will not develop a functional impairment due to coal workers' pneumoconiosis in the absence of further coal mine dust exposure." This premise directly conflicts with the Act's premise that coal workers' pneumoconiosis is a "latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." 20 C.F.R. § 718.201(c).

Second, Dr. Fino opined that "obstruction is not a clinically significant abnormality arising out of the inhalation of coal mine dust." Dr. Fino further stated, "[c]ertainly the epidemiologic data that is available at this time, and all of the epidemiologic research, has not documented a disabling respiratory abnormality of

18

an obstructive nature arising out of coal mine dust exposure." Dr. Fino thus concluded that Dunford's obstructive impairment could not have been caused by his coal mine employment. This conclusion, however, conflicts with the Act's premise that an obstructive impairment can be caused by coal mine employment. See 20 C.F.R. § 718.201(a)(2); Stiltner, 86 F.3d at 341; Warth, 60 F.3d at 174-75.

Because ALJ Craft properly found these two opinions to be hostile to the Act, she appropriately discredited Dr. Fino's opinion in her determination whether Sea "B" had proved that Dunford does not suffer from legal pneumoconiosis.

B.   Reversibility of Pneumoconiosis

Contrary to Sea "B"'s arguments, ALJ Craft properly considered the evidence of reversibility in the record. Employer expert physician Dr. Castle described Dunford's obstructive impairment as only "partially reversible" in his medical report. Thus, Dunford's obstructive impairment was partially irreversible. As previously noted, ALJ Craft permissibly rejected Dr. Castle's opinion that Dunford's prior smoking history was a contributing cause of the obstructive impairment. Accordingly, the evidence in the record supports ALJ Craft's conclusion that Sea "B" failed to rule out Dunford's coal mine employment as a contributing cause of Dunford's partially irreversible obstructive impairment.

19

Further, ALJ Craft fully considered the results of Dunford's pulmonary function studies, which revealed indications of reversibility.[9] ALJ Craft noted that Dunford achieved qualifying scores in the pulmonary function studies administered between August 1988 and January 1999.[10] ALJ Craft further noted that Dunford's FEV1 scores improved after the administration of bronchodilators.[11] While this improvement suggests some reversibility of Dunford's impairment, Dunford still received qualifying FEV1 scores both before and after the administration of the bronchodilators.[12] Two minor exceptions to the qualifying

---

[9]A pulmonary function study measures the obstruction in the airways of the patient's lungs and the degree of pulmonary function impairment. The greater the resistance to airflow, the greater the degree of the patient's lung impairment. Pulmonary function tests include forced expiratory volume in one second (FEV1) and maximum voluntary ventilation (MVV). FEV1 measures the amount of air a patient can exhale in one second using maximum effort, and is expressed in terms of liters per second. MVV measures the maximum volume of air that can be moved by the patient's respiratory apparatus in one minute, and is expressed in terms of liters per minute. In order to invoke the interim presumption pursuant to 20 C.F.R. § 727.203(a)(2), a claimant of Dunford's age and height must have a "qualifying" FEV1 score of 2.70 or less and a "qualifying" MVV score of less than or equal to 108.

[10]Dunford's March 1996 pulmonary function study cannot be considered as qualifying for the interim presumption because no MVV was recorded.

[11]A bronchodilator is a medication that relaxes the bronchial muscles and thus expands the air passages of the bronchi.

[12]While Dunford achieved a qualifying score before the administration of bronchodilator medication in the January 1994 pulmonary function study, no post-bronchodilator results were obtained.

scores occurred in August 1988 and October 1994, when Dunford achieved post-bronchodilator scores of 2.76 and 2.77, respectively. ALJ Craft rationally disregarded these two scores because they were close to the qualifying FEV1 score of 2.70.

ALJ Craft found that the opinions of most of the physicians who had diagnosed Dunford as suffering from a coal dust related disease supported the conclusion that Dunford's pre-bronchodilator FEV1 scores accurately reflected his capacity to perform in his coal mine employment. ALJ Craft further found Dunford's pulmonary function studies to be "consistently qualifying, with the rare and close exceptions described above." Accordingly, substantial evidence supports ALJ Craft's conclusion that the evidence in the record failed to rule out coal mine employment as a cause of Dunford's total disability.

C.    Start Date for Benefits

Substantial evidence also supports ALJ Craft's determination pursuant to 20 C.F.R. § 725.503(b) that Dunford was entitled to benefits beginning in August 1988.[13] She selected this date because

[13]That regulation provides, in relevant part:

Benefits are payable to a miner who is entitled beginning with the month of onset of total disability due to pneumoconiosis arising out of coal mine employment. Where the evidence does not establish the month of onset, benefits shall be payable to such miner beginning with the month during which the claim was filed.

21

it was the month of onset of his total disability due to pneumoconiosis. See 20 C.F.R. § 725.503(b). ALJ Craft found that all of Dunford's pulmonary function test results since that time, with the exception of the two "rare and close" post-bronchodilator FEV1 scores described above, qualified Dunford for the rebuttable presumption, which Sea "B" had failed to rebut.

Further, ALJ Craft found that the "opinions of most of the physicians who diagnosed coal dust related disease support the conclusion that the pre-bronchodilator values accurately reflected Mr. Dunford's capacity to perform coal mine work." For example, in March 1987, a full year and one-half prior to Dunford's September 1988 surgery for lung cancer, one of Dunford's expert physicians, Dr. Modi, examined Dunford and diagnosed him as suffering from an "interstitial pulmonary fibrosis secondary to exposure to coal dust." Dr. Modi concluded that Dunford was "totally impaired and disabled due to coal dust inhalation."

Similarly, in February 1989, Dunford's expert physician Dr. Robinette examined Dunford and diagnosed him as having "an obstructive airway disorder." Dr. Robinette stated that while Dunford's condition "shows partial reversibility," he anticipated it to be a "chronic and irreversible" condition.

Dunford's expert physician Dr. Strader examined him in August 1993 and determined that he suffered from pneumoconiosis. Dr.

---

20 C.F.R. § 725.503(b).

22

Strader concluded that Dunford's condition "probably" arose from his coal mine employment and that Dunford was "probably disabled from doing coal mine work." In a May 1995 medical report, Dunford's expert physician Dr. Ugolini also concluded that Dunford suffered from coal workers' pneumoconiosis.

After considering the medical opinions of Drs. Modi, Strader, Robinette, and Ugolini in conjunction with Dunford's pulmonary function test results, ALJ Craft concluded that "the record establishes that Mr. Dunford was totally disabled due to pneumoconiosis by the month of August 1988, when his pulmonary function tests first resulted in qualifying values." This determination was rational, supported by substantial evidence, and in accordance with the applicable law.

IV.

After considering the joint appendix, the briefs, and the arguments of counsel, we find no reversible error. We hold that ALJ Craft appropriately considered all the relevant evidence and that her award of benefits to Dunford on modification and her determination of the onset date of that award are supported by substantial evidence, rational, and in accordance with the law. We therefore affirm the Board's Decision and Orders affirming the

23

award of benefits to Dunford.  Sea "B"'s petition for review is denied.

AFFIRMED